## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM HOWARD HOUSMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:22-cv-1264 |
| | ) | |
| | ) | |
| v. | ) | Judge Nora Barry Fischer |
| | ) | Magistrate Judge Patricia L. Dodge |
| | ) | |
| SMART COMMUNICATION, | ) | |
| GEORGE LITTLE, MS. KOIS, | ) | |
| MS. ANDREETTI; MICHAEL ZAKEN, | ) | |
| and KERI MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.      Recommendation

It is respectfully recommended that the Motion to Dismiss filed by Defendants George Little, Ms. Kois, Ms. Andreetti, Michael Zaken, and Keri Moore ("the Corrections Defendants"), ECF No. 18, be granted. It is further recommended that the claim against Defendant Smart Communication be dismissed with leave to amend.

### II.      Report

#### A.      <u>Introduction</u>

Plaintiff William Howard Housman, a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Greene, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. ECF No. 4. In the Complaint, he asserts that his procedural due process rights under the Fourteenth Amendment to the United States Constitution were violated when items of mail sent to him were rejected without notice to him.

The Corrections Defendants, all of whom are DOC employees, have filed a motion to dismiss Housman's claims against them (ECF No. 18), which has been fully briefed and is ready for consideration. Smart Communication, the only other defendant in this case, has not yet been served with the Complaint and is not a party to the instant motion.

### B.    Factual Allegations

The Complaint, which incorporates several grievances filed by Housman, alleges that his attorney sent him two pieces of legal mail dated April 22, 2021, and August 18, 2021, which were rejected by Defendant Kois and returned to sender without notice to Housman. ECF No. 4 at 8. When Housman filed a grievance regarding this matter, Defendant Andreetti informed him that legal mail directed to him was rejected by the prison on May 4, 2021, and August 19, 2021, because the mail did not display an Attorney Control Number and Time Code. ECF No. 4-5 at 8. In upholding the denial of that grievance, Defendant Zaken reiterated the reason for rejection, *i.e.*, the lack of an Attorney Control Number and Time Code required by DOC policy for all privileged mail. *Id.* at 11. The Final Appeal Decision, signed by Defendant Moore, stated that the responses from Andreetti and Zaken were sufficient to address Housman's grievance. *Id.* at 13.

Housman also alleges that on or around January 18, 2022, he received notice from his fiancée that she had sent him a letter which was rejected and returned to her. ECF No. 4 at 8. In responding to Housman's grievance on this matter, Andreetti informed him that the letter had been rejected by Defendant Smart Communication[1] because it was missing an inmate number. ECF No. 4-5 at 20. In upholding the denial of the grievance, Zaken reiterated that the letter had been

---

[1] Smart Communications (referred to in the complaint at Smart Communication) is a vendor contracted by DOC to act as the central incoming mail processing center for non-privileged correspondence for inmates in the custody of the DOC. ECF No. 4 at 6; *see also* DOC Policy Statement DC-ADM 803 Sec. 1(A)(3) (August 10, 2020).

rejected by Smart Communication without reaching SCI-Greene because it lacked the inmate number required for processing. *Id.* at 22. In the Final Appeal Decision, Moore stated that the responses from Andreetti and Zaken were sufficient to address Housman's grievance. *Id.* at 24.

Housman asserts claims against Defendants in both their individual and official capacities and seeks damages in the amount of $20,000.00 from each Defendant. ECF No. 4 at 3-4, 7.

C.   **Legal Standards**

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. Further, in considering a motion to dismiss, the court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citations omitted).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court is not limited to the arguments presented in the motion to dismiss, but may *sua sponte* consider the adequacy of the complaint pursuant to the screening provisions of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"). *See*, *e.g.*, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.11 (3d Cir. 2022) (explaining that the PLRA's screening provisions at 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c) are "applicable throughout the entire litigation process.") (internal quotation and citation omitted); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008) (the court may *sua sponte* rest its dismissal upon a ground not raised in a motion to dismiss pursuant to the screening provisions of the PLRA).

Finally, "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

**D.**     **Discussion**

1.     Official Capacity Claims

Because the Corrections Defendants are employees of the DOC, any claims against them in their official capacities are barred by the immunity afforded to the Commonwealth of Pennsylvania by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution proscribes actions for damages in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). "Because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011).

Further, claims against the Corrections Defendants in their official capacities are legally claims against the Commonwealth of Pennsylvania, and the Commonwealth is not a person that can be sued under 42 U.S.C. § 1983, even if the Eleventh Amendment permitted this Court to exercise jurisdiction over the claims. *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

Accordingly, the claims against the Corrections Defendants in their official capacities should be dismissed with prejudice.

### 2.   Personal Involvement of Corrections Defendants

The Corrections Defendants argue that Housman does not plead adequate personal involvement in his alleged constitutional deprivation on the part of Defendants Little, Zaken, Moore, or Andreetti. ECF No. 19 at 4-6. In order to assert a claim against a defendant in a civil rights action pursuant to 42 U.S.C.§ 1983, a plaintiff must allege that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* Further, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Finally, allegations that a defendant participated only in the grievance process are insufficient to show the requisite personal involvement in the underlying constitutional violation. *Curtis v. Wetzel*, 763 Fed. Appx. 259, 263 (3d Cir. 2019); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation).

As to Defendants Zaken, Moore, and Andreetti, Housman alleges only that, during the grievance process, they were "made aware" of the lack of notice given to him. ECF Nos. 4 at 8.

As set forth above, allegations of these Defendants' post-event participation in the grievance process are insufficient to show their personal involvement in the claimed constitutional violation.

In his brief in opposition to the instant motion, Housman asserts that these Defendants are liable under the theory that they knew (via the grievance process) of an ongoing violation of Housman's constitutional rights and failed to remedy that violation. ECF No. 22 at 4-5. While this theory is supported by case law, *see Mayo v. Oppman*, 2018 WL 1833348, *4 (W.D. Pa. Jan. 23, 2018) (citations, brackets, and quotation marks omitted) ("It is worth noting that numerous courts have explained that a plaintiff states a claim by alleging that a supervisory defendant reviewed a grievance where the plaintiff alleges an ongoing violation as she is personally involved in that violation because she is confronted with a situation she can remedy directly"), it is not supported in fact. Housman alleges three specific instances of rejected mail, not an ongoing constitutional violation. As such, this theory is inapplicable to this case. Accordingly, the claims against Defendants Zaken, Moore, and Andreetti should be dismissed based upon their lack of personal involvement.

Housman similarly fails to plead any facts regarding any personal involvement by Defendant Little. While Housman identifies Little as "the Secretary of Corrections," who "has control over all the Department of Corrections," ECF No. 4 at 6, he makes no other factual allegations in the Complaint regarding Little. Of note, the Complaint includes no allegations that Little participated in or was otherwise responsible for any alleged constitutional violations. Thus, as Housman failed to allege any personal involvement by Little, his claims against Little should be dismissed.

The Court notes, however, that in his brief in opposition, Housman states: "When George Little ("Little") was appointed 'Acting Secretary of Corrections', the duty fell on his shoulders to

ensure, this violation of prisoner's rights, was addressed, and brought back into the confines of the Constitution. Because [L]ittle refused to fix, the Unconstitutional Policy, it created a practice of allowing his staff to violate prisoner's rights at will." ECF No. 22 at 3.

A party may not use a responsive pleading to supplement a complaint, *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Therefore, Housman's statements in his brief cannot be considered in resolving Defendants' motion as it relates to Defendant Little.[2]

Finally, the Court notes that the Corrections Defendants do not move for dismissal of the claim against Defendant Kois on the basis of lack of personal involvement, presumably because Housman claims that Kois, who is allegedly responsible for handling institutional mail, rejected his incoming legal mail. ECF No. 4 at 6, 8. At this stage, these allegations are sufficient to support a claim that Kois was personally involved in the claim asserted.[3] At the same time, however, the claim against Kois should be dismissed on other grounds, as discussed below.

Thus, the Complaint fails to sufficiently allege the personal involvement of any of the Corrections Defendants other than Kois. In the event that Housman is permitted and elects to amend his claim, he must plead facts that plausibly allege the personal involvement of each of the Corrections Defendants as outlined herein.

---

[2] Even if this allegation had been made in the Complaint and it plausibly demonstrated Little's personal involvement in the alleged constitutional deprivation about which Housman complains, the claim against Little still fails, as explained below.

[3] The Court notes that "Exhibit B," which Housman cites in support of the allegation that Kois rejected the mail, does not mention Kois. ECF No. 4 at 8 (citing ECF No. 4-2). Further, while additional exhibits incorporated into the complaint reflect that Kois responded to a complaint submitted by Housman about the rejected legal mail, *see*, *e.g.*, ECF No. 4-4, as set forth above, her post-event participation in the grievance process is insufficient to show personal involvement in the claimed constitutional violation.

3.      Procedural Due Process

In order to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Under the Fourteenth Amendment to the United States Constitution, states are prohibited from, *inter alia*, depriving "any person" of their liberty "without due process of law." U.S. Const. amend. XIV § 1.

The United States Supreme Court has held that prisoners have a liberty interest in corresponding by mail which must be accompanied by minimum procedural safeguards. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974). The United States Court of Appeals for the Third Circuit has further held that even when a prison rejects a prisoner's mail for violation of a content-neutral policy, due process requires notice and a reasonable chance to challenge the rejection decision. *Vogt v. Wetzel*, 8 F.4th 182 (3d Cir. 2021).

Housman alleges that he did not receive notice when his incoming mail was rejected, thus plausibly alleging that he was deprived of a liberty interest. However, in order to state a claim for a constitutional violation, he must also allege that the state failed to provide due process in regarding the deprivation. He makes no such allegations. On this basis alone, the complaint should be dismissed for failure to state a claim.

Nonetheless, it is worth addressing the process Housman did receive. He alleges that he was able to file grievances as to the rejection of his mail and through the grievance process, he received explanations from prison officials as to the reasons for the rejections. In their brief in support of their motion to dismiss, the Corrections Defendants assert that the grievance process provided Housman with a meaningful post-deprivation remedy, the existence of which precludes

a finding that his procedural due process rights were violated. ECF No. 19 at 8. In his responsive

brief, Housman baldly asserts that "[t]he Defendants failed to provide any type of safeguards,"

including "a reasonable chance to challenge." ECF No. 22 at 7. Housman does not specifically

address the adequacy of the grievance process as a post-deprivation remedy, however.

> As our Supreme Court has explained.
>
> In procedural due process claims, the deprivation by state action of a
> constitutionally protected interest in "life, liberty, or property" is not in itself
> unconstitutional; what is unconstitutional is the deprivation of such an interest
> without due process of law. *Parratt* [*v. Taylor*], 451 U.S. [527] at 537 [(1981)]
> [*overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)];*Carey*
> *v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to
> protect persons not from the deprivation, but from the mistaken or unjustified
> deprivation of life, liberty, or property"). The constitutional violation actionable
> under § 1983 is not complete when the deprivation occurs; it is not complete unless
> and until the State fails to provide due process. Therefore, to determine whether a
> constitutional violation has occurred, it is necessary to ask what process the State
> provided, and whether it was constitutionally adequate. This inquiry would
> examine the procedural safeguards built into the statutory or administrative
> procedure of effecting the deprivation, and any remedies for erroneous deprivations
> provided by statute or tort law.

*Zinermon v. Burch,* 494 U.S. 113, 125-26 (1990).

The Third Circuit has held that where the state "must take quick action, or where it is

impractical to provide meaningful predeprivation process, due process will be satisfied by a

meaningful postdeprivation remedy." *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 421

(3d Cir. 2000) (citing *Daniels*, 474 U.S. 327).[4] In *Tillman*, the Court found the state prison

grievance system to be an adequate post-deprivation remedy for deprivations involving "routine

matters" with "low risk of error" which could be corrected through the grievance process without

---

[4] *Tillman* concerned the deprivation of property, not liberty, but the Supreme Court has held that
there is no basis for "a categorial distinction between a deprivation of liberty and one of property."
*Zinermon*, 494 U.S. at 132 (citing, *inter alia*, *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552
(1972) ("The dichotomy between personal liberties and property rights is a false one")).

any undue burden on a prisoner's rights. *Id.* at 422. The Court found that "to require predeprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program.…" *Id.* In reaching its conclusions, the *Tillman* court considered the following:

> In considering a due process claim, we look to the private interest, the governmental interest, and the value of the available procedure in safeguarding against an erroneous deprivation. [*Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)]; *see also Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). Due process " 'is flexible and calls for such procedural protections as the particular situation demands' " in order to "minimize the risk of error." *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1, 12-13, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972)). "The amount of notice due depends on the context." *Reynolds*, 128 F.3d at 179 (citing *Gilbert v. Homar*, 520 U.S. 924, 117 S. Ct. 1807, 1812, 138 L. Ed. 2d 120 (1997)).

*Tillman*, 221 F.3d at 421.

Viewing the allegations of the Complaint in light of these legal standards, the Court observes: (1) the routine review of incoming mail for required identifiers appears to be a ministerial matter with a low risk for error; (2) conducting pre-deprivation proceedings each time one of the identifiers was missing appears to be a significantly impractical and burdensome proposition; and (3) Housman was able to obtain review of the rejections and was provided with explanations for the rejections through the grievance process. Absent additional factual allegations, this suggests that Housman was provided with adequate due process. Simply put, Housman has not alleged facts that would allow the court to draw the reasonable inference the grievance process was inadequate.

### 4.   Smart Communication

While Smart Communication has not yet been served with the complaint, it is appropriate to consider the adequacy of Housman's claim against it pursuant to the screening provisions of the PLRA. It is recommended that Smart Communication be dismissed prior to service pursuant to

this Court's screening authority. Simply put, for the same reasons discussed previously, Housman's Complaint fails to adequately plead a due process claim against Smart Communication.

The Court also notes that the path to § 1983 liability for a private entity acting under color of state law is through allegations that the violation of a civil right was caused by a policy or custom of that entity. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)) ("In order for PHS to be liable, the Natales must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege."). Housman has made no such allegations in his complaint. If he elects to file an amended complaint naming Smart Communication as a defendant, Housman must allege facts that will allow the Court to draw the reasonable inference that the Smart Communication is liable for a constitutional violation, that is to say, he must allege a factual basis to show that a Smart Communication policy that caused the violation of his constitutional rights in order for his claim against it to survive.

### E.   **Amendment**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Because Housman cannot circumvent the immunity of the Corrections Defendants in their official capacities, it would be futile to permit amendment in that respect. However, the Court cannot conclude that it would be futile or inequitable to permit Housman to file an amended complaint to remedy the other deficiencies identified herein.

12

F.      <u>Conclusion</u>

For all of these reasons, it is respectfully recommended that the Court grant the Motion to Dismiss filed by Defendants George Little, Ms. Kois, Ms. Andreetti, Michael Zaken, and Keri Moore. The claims against Little, Kois, Andreetti, Zaken, and Moore in their official capacities should be dismissed with prejudice. In all other respects, Housman's claims against the Corrections Defendants should be dismissed without prejudice and with leave to amend.

It is further recommended that the claim against Defendant Smart Communication be dismissed without prejudice and with leave to amend.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: June 23, 2023                    /s/ Patricia L. Dodge
                                        PATRICIA L. DODGE
                                        United States Magistrate Judge